

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-11-00427-CV

IN THE INTEREST OF K.H.,
A CHILD

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Father appeals the trial court's termination of his parental rights to his son K.H.  Father raises five issues, arguing that the evidence is legally and factually insufficient to support the best interest finding and factually insufficient to support the trial court's findings under Texas Family Code section 161.001(1)(D), (E), and (O).  We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In June 2008, Child Protective Services (hereinafter referred to as CPS or the Department) received a referral for physical abuse of K.H. by Mother and her boyfriend Lawrence. During a fight between Mother and Lawrence, Lawrence shook six-month-old K.H.,[2] turned him upside down, and threw him down on the wood floor, causing a cut on K.H.'s head and a left tibia fracture. CPS removed K.H. and placed him in foster care. Mother told CPS that K.H.'s Father's whereabouts were unknown and that he had no contact with his son.

Jennifer Merritt, the CPS caseworker assigned to K.H.'s case, testified that she received the case in June 2008 and set up services for Mother. Merritt also tracked down Father and gave him a service plan in July 2008. After the initial termination trial, the trial court terminated Mother's parental rights to K.H. but denied the termination of Father's parental rights.

Following the trial court's decision denying termination of Father's parental rights, on April 7, 2010, the trial court and the parties signed an "Agreed Order For Actions Necessary For Parent To Obtain Return Of Child" pursuant to family code section 161.001(1)(O). The trial court ordered Father to comply with the following tasks on or before August 2, 2010: (1) successfully complete parenting classes through Merit Family Services; (2) complete a psychological evaluation through Dr. Nichelle Wiggins; (3) participate in and successfully complete

---

[2]K.H. was born December 28, 2007.

individual therapy through Positive Influences; (4) submit to random drug tests within twenty-four hours of a request by CPS; (5) complete a drug assessment through Merit Family Services and follow all recommendations of the assessment; (6) attend Alcoholics Anonymous two times per week and provide documentation of attendance; (7) obtain an Alcoholics Anonymous (AA) sponsor; (8) secure and maintain stable housing and provide documentation to CPS; (9) maintain legal employment; (10) develop a support system that can assist him in his parenting role and provide information identifying his support system to CPS; and (11) successfully participate in and complete an anger management course through Positive Influences.

On October 7, 2010, the Department filed a petition for termination of Father's parental rights, alleging, among other grounds, that Father had failed to comply with the provisions of a court order that specifically established the actions necessary for Father to obtain the return of K.H. At the termination trial on May 24, 2011 and June 20, 2011, the trial court heard testimony from the caseworker and Father that Father had not completed individual therapy, that Father had not submitted to three requested drug tests within twenty-four hours of the requests and had also tested positive for drug use throughout the case, that Father had not followed all of the recommendations from the drug assessment, that Father had not attended Narcotics Anonymous (NA) two times

per week and had not provided documentation of his attendance,[3] that Father had not obtained a sponsor, that Father had not maintained employment, and that Father had not developed a support system to help him with K.H. The trial court thereafter found by clear and convincing evidence that Father had knowingly placed or knowingly allowed K.H. to remain in conditions or surroundings that endangered the emotional or physical well-being of the child, that Father had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child, and that Father had failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the child. This appeal followed.

### III. EVIDENCE IS LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT TERMINATION FINDINGS

In his five issues, Father argues that the evidence is legally and factually insufficient to support the best interest finding and factually insufficient to support the trial court's findings under section 161.001(1)(D), (E), and (O). After setting forth the law for terminating parental rights and the *Holley* factors, Father argues in a single sentence: "Appellant R.H. contends that he completed all of the services requested of him by the Department. RR (2/176–177)." Father's one-sentence argument, which references only two pages—neither of which are in

_____

[3]Father testified that he had talked to his caseworker about attending NA meetings instead of AA meetings; he said that she did not have any objections to that.

the appellate record,[4] does not explain how the evidence is legally or factually insufficient to support a best interest finding under the *Holley* best interest factors and does not explain how the evidence is factually insufficient to support the trial court's findings under section 161.001(1)(D), (E), and (O). *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O) (West Supp. 2011); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Father's one-sentence argument contains no citations to case law or statutory law. *See* Tex. R. App. P. 38.1(i); *see also In re A.W.*, No. 02-03-00349-CV, 2004 WL 1799893, at *6 (Tex. App.—Fort Worth Aug. 12, 2004, no pet.) (mem. op.) (holding that appellant waived best interest argument because he presented no argument or authority that evidence was legally or factually insufficient to support trial court's best interest finding). Because a parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right," *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003), we nonetheless analyze the sufficiency arguments raised by Father that are necessary to final disposition of this appeal.

## A. Standards of Review

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground

---

[4]Volume two of the reporter's record ends on page 128, and volume three of the reporter's record ends on page 118.

listed under subsection (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (West Supp. 2011); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re D.T.*, 34 S.W.3d 625, 629 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh'g).

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001; *see also* § 161.206(a) (West 2008). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have

6

done so.  *Id.*  We disregard all evidence that a reasonable factfinder could have disbelieved.  *Id.*  We consider undisputed evidence even if it is contrary to the finding.  *Id.*  That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not.  *Id.*

We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province.  *Id.* at 573–74.  And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable.  *Id.* at 573.

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own.  *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).  We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that Father violated section 161.001(1)(D), (E), and (O) and that the termination of the parent-child relationship would be in the best interest of K.H.  Tex. Fam. Code Ann. § 161.001; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).  If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient.  *H.R.M.*, 209 S.W.3d at 108.

**B. Sufficient Evidence to Support Section 161.001(1)(O) Finding**

In his fifth issue, Father argues that the evidence is factually insufficient to support the trial court's finding under section 161.001(1)(O). Father argues that he completed all of the services requested of him by the Department, but he does not address his compliance with the trial court's order of April 7, 2010, requiring him to complete eleven tasks in order for K.H. to be returned to him.

Family code section 161.001(1)(O) states,

> The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:
>
> (1) that the parent has:
>
> . . . .
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

Tex. Fam. Code Ann. § 161.001(1)(O).

As set forth above, the record demonstrates that the trial court heard testimony from the caseworker and Father that Father had not completed individual therapy, that Father had not submitted to three requested drug tests within twenty-four hours of the requests and had also tested positive for drug use throughout the case, that Father had not followed all of the recommendations from the drug assessment, that Father had not attended NA two times per week

8

and had not provided documentation of his attendance, that Father had not obtained a sponsor, that Father had not maintained employment, and that Father had not developed a support system to help him with K.H.

Father did not dispute that he had failed to comply with several provisions of the trial court's April 7, 2010 order; instead, he contended that his efforts to complete a portion of the services constituted substantial compliance. The statute, however, does not provide for substantial compliance. *See In re M.C.G.*, 329 S.W.3d 674, 675 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (supp. op. on reh'g) (stating that the family code does not provide for excuses for failure to comply in assessing a statutory violation; any excuse goes only to the best interest determination); *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.) (stating that the family code does not provide for substantial compliance with a family service plan). Giving due deference to the factfinder's findings and not supplanting the judgment with our own, we hold that, on the entire record, a factfinder could reasonably have formed a firm conviction or belief that Father had violated section 161.001(1)(O) by failing to fully comply with the trial court's April 7, 2010 order specifically establishing the actions necessary for Father to obtain the return of K.H. *See H.R.M.*, 209 S.W.3d at 108; *In re C.M.C.*, 273 S.W.3d 862, 874–76 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding evidence legally and factually sufficient to support section 161.001(1)(O) finding because mother had failed to comply with numerous provisions of her service plan); *In re C.D.B.*, 218 S.W.3d 308, 312 (Tex. App.—Dallas 2007, no pet.)

9

(holding evidence legally and factually sufficient to support jury's section 161.001(1)(O) finding, even though mother testified that she did not finish all the services because she did not have transportation to some appointments and was in jail at the time of some appointments).  We overrule Father's fifth issue.[5]

### C.  Sufficient Evidence to Support Section 161.001(2) Finding

In his first and second issues, Father argues that the evidence is legally and factually insufficient to support the trial court's best interest finding.

There is a strong presumption that keeping a child with a parent is in the child's best interest.  *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).  Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest.  Tex. Fam. Code Ann. § 263.307(a) (West 2008).  Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

> (A)    the desires of the child;
>
> (B)    the emotional and physical needs of the child now and in the future;
>
> (C)    the emotional and physical danger to the child now and in the future;
>
> (D)    the parental abilities of the individuals seeking custody;
>
> (E)    the programs available to assist these individuals to promote the best interest of the child;

---

[5]Because only one ground under section 161.001(1) is needed, we need not reach Father's third and fourth issues pertaining to the trial court's findings under subsections (D) and (E).  *See* Tex. R. App. P. 47.1 (stating that appellate court need only address every issue necessary to final disposition of appeal).

(F)     the plans for the child by these individuals or by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)     any excuse for the acts or omissions of the parent.

*Holley*, 544 S.W.2d at 371–72.

These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

### 1. K.H.'s Desires

Here, the record does not contain K.H.'s desires because K.H. did not testify. The record reveals that Father visited with K.H. every two weeks for two hours and said that K.H. was happy to see him "[a]ll the time" and that they have a "great relationship."

Guadalupe Palomino, a case aide with CPS who had supervised Father's visits with K.H., testified that Father was really good with K.H. and that K.H. loved going to see Father. When Palomino picked up K.H. from his foster home, he looked forward to visiting with Father and became excited to see him.

11

Jennifer Merritt, the caseworker, testified that Father and K.H. were "somewhat close" and seemed to have fun together every other week at the visits. Merritt also testified that K.H. was doing wonderfully in his foster placement and that he loved his new home, which he had been in for approximately seven months at the time the termination trial concluded.

The trial court was entitled to find that this factor weighed neither in favor of nor against termination.

## 2. K.H.'s Emotional and Physical Needs Now and in the Future

With regard to K.H.'s emotional and physical needs now and in the future, the record revealed that K.H. was "very smart," "very verbal," was developmentally on target (having completed speech therapy while in care), and did not appear to have any special or mental health needs. As a three-and-a-half-year-old boy, K.H. undoubtedly required safe, stable housing and financial provision. Father, however, was not supporting K.H. financially or emotionally when the case started, and that had not changed significantly by the time of the termination trial. And as set forth in more detail below, Father was unable to provide safe, stable housing for K.H. The trial court was entitled to find that this factor weighed in favor of termination.

## 3. Emotional and Physical Danger to K.H. Now and in the Future

With regard to the emotional and physical danger to K.H. now and in the future, Merritt testified that Father's drug use at the time of the termination trial was "still consistent, which would affect the child." Merritt recalled that Father's

psychological evaluation revealed that he had continued drinking after being required to install an interlock device on his car and that it would take him twenty to thirty minutes to pass the test. Father's personality disorder diagnosis (which included substance abuse issues and antisocial personality disorder), as well as his dangerous decisions that related to law violations, concerned Merritt. Moreover, throughout the case Father had shown instability in his employment and an inability to obtain safe housing; Father had made the decision to live in a home with people who had abused him and acknowledged that the home environment would be hostile to K.H. because his father did not like that K.H. was biracial. The trial court was entitled to find that this factor weighed in favor of termination.

### 4. Father's Parental Abilities

With regard to Father's parental abilities, Palomino testified that during the visits, no threat of any violence or danger was observed with regard to Father's treatment of K.H., and Father never appeared to be under the influence of drugs or alcohol at the visits. Father communicated with K.H. in an appropriate manner, played with whatever toys K.H. wanted to play with during the office visits, and played with him on the playground equipment when the visits were held at the park. Palomino testified that it appeared that Father and K.H. had fun together. Father appropriately redirected K.H. when he got into something that he should not play with. Palomino said that Father's absences were few and far between.

13

Father had completed the parenting classes and testified that he did not think using drugs was an appropriate parenting decision. Father, however, believed that he could parent properly after using amphetamines, cocaine, or marijuana. Father denied that he was committing an act of endangerment to K.H. each and every time he used illegal drugs. During his psychological evaluation, Father said that his problems with drinking and using drugs were in the past and that it was no longer an issue for him. This was not consistent with evidence that Father had submitted drug tests and hair tests showing that he had used drugs throughout the three years that the case was pending.

Because of his drug use, Merritt thought that Father had not demonstrated that he is ready to be a dad to his son. Moreover, Merritt did not think that Father had exhibited the behavior that would show that he could provide a loving, nurturing, and stable environment for K.H. Merritt testified that Father appears to have a "very buddy" relationship with K.H.; Merritt would not say that Father is "a complete parent figure."

Dr. Wiggins testified that Father

has personality disorder traits [Axis 1 substance abuse issues and Axis 2 antisocial personality disorder] that will lead to chronic substance and alcohol abuse issues, most likely. That will lead to repeated difficulties with the law. That it will be the type of person who is not going to show any stability or consistency in terms of his responsibilities in life.

14

According to Dr. Wiggins, Father talked very lovingly about his son but did not seem to have a realistic understanding of how to provide for him.[6]

The trial court was entitled to find that this factor weighed in favor of termination.

## 5. The Parties' Plans for K.H. and Programs to Assist His Best Interests

With regard to Father's plans for K.H., the Department acknowledged that Father loved K.H. very much and always expressed the desire to have his son live with him. Father, however, was being financially supported by his father, did not have any money saved up, and had not purchased any furniture for K.H. Father testified that he was ready for K.H. to go home with him even though he would be homeless because his father and uncle would not allow K.H. to live with them.

Sharon Giraud, the attorney ad litem for K.H., asked that Father's parental rights be terminated. She said that the issues of housing and drug addiction had not been cleared up during the three and half years that the case was pending. She also mentioned that Father appeared to be "a great babysitter" but that she did not see a parental bond there.

According to Merritt, the Department believed that it was in K.H.'s best interest for Father's parental rights to be terminated. Merritt asked the trial court to terminate Father's parental rights, so that the foster parents could adopt K.H.

---

[6]Father admitted that he had fathered another child whom he had not parented and for whom he had not done anything to establish his paternity.

15

The record revealed that the foster family "has all kinds of programs available to assist them," including counseling for K.H., if necessary, and that K.H. would be covered with medical insurance.

The trial court was entitled to find that these factors weighed in favor of termination.

### 6. The Stability of the Home or Proposed Placement

During the three years that Merritt worked the case, Father had only one residence: he lived with his father and uncle. K.H. had never lived with Father.[7] Merritt testified that Father's housing was stable but not appropriate. Father told Merritt that a police officer had recently moved close by and that his father and uncle had to smoke marijuana inside the house instead of outside. Additionally, Father's father told Merritt in May 2010 that K.H. would not be welcome in the home because he was biracial. Thus, Father did not have a home that he could take K.H. to and had not secured one for three years. Merritt was therefore concerned about Father's ability to find his own housing. Father said that he would be living on the street if he was not living with his father and his uncle. And Father agreed that if the court returned K.H. to him, K.H. would either live in an environment that would be hostile to him or that he would be homeless.

---

[7]Merritt located Father when K.H. was approximately seven months old, and Father's service plan, which included visitation with K.H., was implemented at that time.

Because Father was still living with his father at the time of the termination trial, Dr. Wiggins opined that Father was stuck and was not ready to make changes.

Merritt testified that K.H. was living in a foster home with a biracial couple. K.H. was doing wonderfully in his foster placement; he had opened up and was talking very well. He loved his new home, which he had been in since November 2010.

The trial court was entitled to find that this factor weighed in favor of termination.

### 7. Father's Acts or Omissions that May Indicate that the Existing Parent-Child Relationship Is Not a Proper One

The record details Father's criminal history. Father pleaded guilty to the misdemeanor offense of possession of marijuana in 2006 (which was committed on June 21, 2005), was placed on community supervision for twelve months, was later adjudicated guilty for violating the conditions of his community supervision, and was sentenced to thirty days in jail and fined $100. Father pleaded guilty to failing to stop at an accident that occurred on June 10, 2007, and was sentenced to thirty days in jail. Father pleaded guilty to the misdemeanor offense of possession of marijuana in 2008 (which was committed on August 17, 2007) and was sentenced to thirty days in jail. Father was convicted for the February 5, 2008 offense of driving while intoxicated with an open container.

Carol Blackmon, the executive director of Merit[8] Counseling Services, testified that Father was not open and honest about the level of his addiction during his drug assessment. But at trial, Father admitted to being a drug addict and testified that he had been addicted to drugs since high school. While the case was pending, Father took a hair strand drug test in April 2009 and tested positive for amphetamines, cocaine, and ecstasy; a hair strand test in October 2009 tested positive for cocaine; while Father was in drug counseling, he tested positive for cocaine on July 13, 2010; a hair strand collected on September 30, 2010, tested positive for cocaine, the amount indicated to Merritt that Father had continued to use illegal substances all along; and a hair follicle test from May 4, 2011, tested positive for cocaine and marijuana. On April 13, 2011, Father told Merritt that he had last used cocaine four or five months prior and had not "used weed in a while." Father admitted that he did not take advantage of all of the programs that he was offered to help with his drug addiction.

Father had obtained his GED and was completing classes to become a physical trainer. Father's employment history was sporadic, and he relied on his father for financial provision. He said that he had found a job in March 2011, but he had not shown Merritt any paystubs and admitted that he did not have enough money to secure an appropriate living arrangement. Father had a child support arrearage of $2,975.65 at the time of the termination trial.

---

[8]This entity's name is spelled a variety of ways in the reporter's record, but this is the correct spelling.

18

The trial court was entitled to find that this factor weighed in favor of termination.

### 8. Excuses for Father's Acts or Omissions

Merritt testified that Father had not given her any excuses for his continued illegal drug use. During Father's testimony, he said that he did not submit to three drug tests within twenty-four hours of the requests because one time he did not have any identification and other times he did not have transportation. Father said that he was not notified in 2011 that he had failed any drug tests. Father also complained that it was hard to develop a parent-child relationship because he was allowed to see his son only four hours per month. The trial court was entitled to find that this factor weighed in favor of termination.

### 9. Analysis of Factors

After weighing the evidence as it relates to the *Holley* factors, we hold that the evidence is both legally and factually sufficient to support the trial court's finding that termination of Father's parental rights to K.H. is in his best interest. *See* Tex. Fam. Code Ann. § 161.001(2); *Jordan v. Dossey*, 325 S.W.3d 700, 733 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding evidence legally and factually sufficient to support the trial court's finding that termination of mother's parental rights was in child's best interest when most of the best interest factors weighed in favor of termination); *In re U.P.*, 105 S.W.3d 222, 230–32 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding evidence legally and factually sufficient to support best interest finding because, among other things,

19

father had abused drugs for years, could not provide a permanent home, had been convicted of two crimes, and had failed to provide child support). We overrule Father's first and second issues.

## IV. CONCLUSION

Having overruled all of the issues necessary for final disposition of this appeal, we affirm the trial court's judgment terminating Father's parental rights to K.H.

SUE WALKER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DELIVERED: July 12, 2012